IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

     **Plaintiff,**

             **v.**              **Criminal No.** 20-316 (FAB)

CRISTOBAL ANTONIO SÁNCHEZ-MATOS
[1],
YERSIN GUEVARA-TERRERO [2],

     **Defendants.**

## OPINION AND ORDER

BESOSA, District Judge.

    Before the Court is defendants Cristobal Antonio Sánchez-Matos ("Sánchez") and Yersin Guevara-Terrero ("Guevara") (collectively, "defendants")'s motion to dismiss the indictment. (Docket Nos. 61, 89 and 93.)  For the reasons set forth below, the defendants' motion to dismiss is **DENIED.**

## I.  Background

    This action concerns an alleged attempt to import cocaine into the United States.  Drug Enforcement Administration Special Agent Noel García ("García") prepared an affidavit in support of the criminal complaint.  (Docket No. 1, Ex. 1.)  The following allegations derive from Special Agent García's affidavit.

    On September 8, 2020, a United States Coast Guard ("USCG") Law Enforcement Team ("LEDET") conducted drug-trafficking

surveillance in the Caribbean Sea onboard Dutch Naval Ship GRONINGEN. Id. at p. 2. A Dutch Maritime Patrol Aircraft observed a go-fast vessel approximately 47 nautical miles north of La Guajira, Venezuela. Id. at p. 2. This vessel displayed *no indicia* of nationality. Id. at p. 3.

LEDET Coast Guardsmen located the go-fast vessel, identifying the three occupants as Sánchez, Guevara, and a minor referred to as "D.D.A.M." Id. Sánchez and Guevara subsequently claimed to be citizens of the Dominican Republic. Id.[1] After boarding the defendants' vessel, LEDET Coast Guardsmen recovered approximately 390 brick-shaped packages. Id. These packages contained 454.8 kilograms of cocaine. Id.

The USCG contacted the Dominican Republic, requesting that this country verify the defendants' claim of registration. Id. The Dominican Republic responded that it "could not confirm or deny registration of vessel," prompting the USCG to detain Sánchez, Guevara, and D.D.A.M. Id.; see Docket No. 113, Ex. 1 (Certification for the Maritime Drug Enforcement Law Act Case

---

[1] Special Agent García's affidavit does not specify whether the defendants claimed Dominican Republic nationality for themselves and/or the vessel. The defendant's motion to dismiss and the United States' response provides, however, that "the crew claimed Dominican Republic nationality for the vessel." Docket No. 61 at p. 1; Docket No. 113 at p. 2 (noting that the "Defendants made a verbal claim [of] Dominican Republic nationality for themselves and the vessel").

Involving   Unknown   Go-Fast   Vessel   (Twon)   Federal   Drug
Identification Number (FDIN) 2020726788).

The   defendants   arrived   in   San   Juan,   Puerto   Rico   on
September 14, 2020.  Id.  On the next day, Sánchez and Guevara
appeared before Magistrate Judge Bruce J. McGiverin for their
preliminary hearings.  (Docket Nos. 4 and 7.)

On September 24, 2020, a grand jury returned a four-count
indictment charging Sánchez and Guevara with conspiracy to possess
with intent to distribute a controlled substance aboard a vessel
subject to the jurisdiction of the United States, in violation of
46 U.S.C. §§ 70503(a)(1) and 70506(b) (count one), possession with
intent to distribute a controlled substance aboard a vessel subject
to the jurisdiction of the United States, in violation of 46 U.S.C.
§ 70503(a)(1) and 18 U.S.C. § 2 (count two), possession of a
machinegun in furtherance of a drug trafficking crime in violation
of 18 U.S.C. § 924(c)(1)(B)(ii) (count three), and possession of
a firearm in furtherance of a drug-trafficking crime in violation
of 18 U.S.C. § 924(c)(1)(A) (count four).  (Docket No. 10.)

Sánchez moved to dismiss the indictment on February 5, 2022.
(Docket No. 61.)  The Court then granted Guevara's motion to join.
(Docket No. 64.)

On May 20, 2022, the Department of State issued an Additional
Certification   for   the   Maritime   Drug   Enforcement   Act   Involving

Unknown Go-Fast Vessel (Twon) Federal Drug Identification Number (FDNI) 2020726788 (hereinafter, "post-indictment Department of State certification"). (Docket No. 113, Ex. 2.) This certification provides that: "On or about March 9, 2022, the Government of the Dominican Republic replied that the claimed registry and nationality of the vessel is denied." Id. at p. 3. Three months later, the defendants filed a supplemental motion to dismiss. (Docket Nos. 89 and 96.)[2] The United States responded. (Docket No. 113.)

## II.  Federal Rule of Criminal Procedure 12

Pursuant to Federal Rule of Criminal Procedure 12(b)(2), a "motion that the court lacks jurisdiction may be made at any time while the case is pending." Fed. R. Crim. P. 12(b)(2). On a motion to dismiss, the allegations contained in the indictment are accepted as true. See United States v. Bohai Trading Co., Inc., 45 F.3d 577, 578 n.1 (1st Cir. 1995).

The federal judicial authority extends "to all Cases, in Law and Equity, arising under the Constitution, the Laws of the United States, and Treaties made." U.S. CONST. art. III, § 2. This Court possesses subject matter jurisdiction in a criminal action when the indictment charges "that the defendant committed a crime

---

[2] This Opinion and Order adjudicates the original and supplemental motions to dismiss. (Docket Nos. 61 and 89.) The Court refers to both motions as a single pleading.

described in Title 18 or in one of the other statutes defining federal crimes." United States v. González, 311 F.3d 440, 442 (1st Cir. 2002); see 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of courts of the States, of all offenses against the laws of the United States.").  The defendants' motion to dismiss pertains to the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70502(c)(1), *et seq.*

### A.   The Maritime Drug Law Enforcement Act

Congress enacted the Maritime Drug Law Enforcement Act in 1986 to diminish the operations of international drug trafficking organizations.  These evasive entities "constantly refine their methods for transporting illegal narcotics from country to country." United States v. Carvajal, 924 F. Supp. 2d 219, 224 (D.D.C. 2013); see Lt. CDR Aaron J. Casavant, In Defense of the U.S. Maritime Drug Enforcement Act:  A Justification for the Law's Extraterritorial Reach, 8 HARV. NAT'L SEC. J. 191, 199-200 (2017) (noting that Congress endeavored to "counter the traffickers' 'mothership' strategy, target[ting] the larger vessels sailing just outside U.S. territorial seas that were sending smaller, faster vessels to bring contraband ashore.").  Consequently, the MDLEA is an expansive statute.  It provides in pertinent part that:

> an individual [on board a vessel subject to the
> jurisdiction of the United States] may not knowingly or
> intentionally . . . manufacture or distribute, or
> possess with intent to manufacture or distribute, a
> controlled substance.

46 U.S.C. §§ 70503(a)(1). "[J]urisdictional issues arising under

the [MDLEA] are preliminary questions of law to be determined

solely by the trial judge," and do not constitute an element of

the offense. 46 U.S.C. § 70504; see United States v. Gil-Martínez,

980 F. Supp. 2d 165, 168 (D.P.R. 2013) (Besosa, J.). Vessels

without nationality are subject to the MDLEA. Stateless vessels

include, but are not limited to:

> (A)    **a vessel abroad which the master or individual
> in charge makes a claim of registry that is denied by
> the nation whose registry is claimed** (hereinafter,
> "subsection (A)");
>
> (B)    a vessel abroad which the master or individual
> in charge fails, on request of an officer of the United
> States authorized to enforce applicable provisions of
> United States law, to make a claim of nationality or
> registry for that vessel;
>
> (C)    **a vessel abroad which the master or individual
> in charge makes a claim of registry and for which the
> claimed nation of registry does not affirmatively and
> unequivocally assert that the vessel is of its
> nationality** (hereinafter, "subsection (C)")

46 U.S.C. §§ 70502(d)(1)(A)-(C) (emphasis added). A vessel may be

deemed stateless "even if [it] does not fall within one of the

specifically enumerated categories." United States v. Matos-

Luchi, 627 F.3d 1, 15 (1st Cir. 2010). To facilitate expeditious

consent and waiver, the MDLEA provides that the flag state may provide registry information "by radio, telephone, or similar oral or electronic means."  46 U.S.C. § 70502(d)(2).[3]

## III. Discussion

The defendants set forth six arguments in support of their motion to dismiss.  (Docket Nos. 61 and 89.)  First, Sánchez and Guevara maintain that they "made a verbal claim of Dominican nationality, not Dominican registry."  Id. at p 3.  Second, the defendants challenge the post-indictment Department of State certification.  Id.  Third, this prosecution is purportedly precluded by United States v. Dávila-Reyes, 23 F.4th 153 (1st Cir. 2022) (reh'g en banc granted, opinion withdrawn, 38 F. 4th 288 (1st Cir. 2022).  (Docket No. 61.)  Fourth, Sánchez and Guevara posit that the MDLEA is unconstitutionally vague.  (Docket No. 89 at p. 13.)  Fifth, the defendants argue that the omission of a nexus requirement offends the Due Process Clause.  Id. at p. 17. Sixth, the defendants claim that the LEDET Coast Guardsmen apprehended their go-fast vessel in Venezuela.  Id. at p. 21.

---

[3] Every vessel is required to "sail under the flag of one State only and, save in exceptional cases. . . shall be subject to its exclusive jurisdiction on the high seas." Convention on the High Seas, art. 6, Apr. 29, 1958, 13 U.S.T. 2312, 450 U.N.T.S. 82.

### A.    Registry and Nationality

Sánchez and Guevara differentiate registry from nationality, asserting that this distinction is fatal to the indictment.  Because the defendants "made a verbal claim of Dominican nationality," they argue, "§ 70502(d)(1)(C) is inapplicable since subsection (C) by its plain terms refers only to claims of registry." (Docket No. 89 at p. 3.)  This proposition is, however, based on a false premise.

Initially, the Dominican Republic could "neither confirm nor deny the vessel's registry," placing this case within the purview of subsection (C).  (Docket No. 113, Ex. 1 at p. 2.)  The Dominican Republic subsequently clarified, however, that the defendants' **"claim of registry and nationality of vessel is denied."**  (Docket No. 113, Ex. 2 at p. 3) (emphasis added). Consequently, subsection (A) is applicable. See United States v. Romero, 32 F.3d 641, 648 (1st Cir. 1994) ("To satisfy the jurisdictional requirement under [the predecessor to subsection (A)], the government presented a 'certification of denial' from the State Department as proof that the defendants' claim of registry was denied by Colombia."); United States v. Rosero, 42 F.3d 166, 174 (3d Cir. 1994) ("[The] prosecution can establish that a vessel is stateless by showing that the master or person in charge made a claim of nationality that was denied by the flag

nation whose registry was claimed."); United States v. Mosquera, 192 F. Supp. 2d 1334, 1349 (M.D. Fla. 2022) ("[The] Guatemalan authorities denied registry of the Defendant's vessel.  Thus, the vessel was stateless for purposes of [the MDLEA].").  Subsection (C) is no longer relevant.

The defendants' argument that "nationality is separate and distinct from a claim of registry" is a *non sequitur*.  (Docket No. 89 at p. 5.)  According to Sánchez and Guevara, "some countries link nationality to registration, while others obviate the need for registration by extending nationality automatically to ships owned by its nationals."  Id. (citation and internal quotation omitted).  The registration requirements mandated by the Dominican Republic is of no concern to this Court.  The relevant authority is the MDLEA, not the maritime laws and customs of other countries.

The MDLEA refers to nationality and registration in the disjunctive.  For instance, the MDLEA provides that a "claim of **nationality or registry** for the vessel is made by the master or individual in charge at the time of the enforcement action."  46 U.S.C. § 70502(b)(2)(B) (emphasis added).  Indeed, the "MDLEA treats the terms 'nationality' and 'registry' as interchangeable throughout § 70502."  United States v. Gruezo, 44 F.4th 1284, 1291 (11th Cir. 2023); see United States v. Escalona-Reid, Case No. 20-203, 2022 U.S. Dist. LEXIS 222556, at *5 (D.P.R. Dec. 8, 2022)

(Carreño-Coll, J.) (noting that "the MDLEA uses registry and nationality interchangeably").  Because nationality and registry are synonymous, dismissal of the indictment is inappropriate on this basis.

###    B.    The Post-Indictment Department of State Certification

        Sánchez and Guevara contend that the post-indictment Department of State certification "does not cure" alleged "jurisdictional defects." (Docket No. 89 at p. 9.)[4]  They question the authenticity of this document, asking "[Who] provided this information to the U.S. government? Was it written?  Was it certified?"  Id. at p. 10.  The defendants are not, however, entitled to this information.

        The MDLEA provides in pertinent part that the "response of a foreign nation to a claim of registry under [subsection (A) or subsection (C)] . . . is prov[en] conclusively by certification of the Secretary of State or the Secretary's designee."  46 U.S. § 70502(d)(2).  The First Circuit Court of Appeals has held that "any further question about [the Department of State

_____

[4] The United Sates may establish jurisdiction "at any time prior to trial." United States v. Michell-Hunter, 663 F.3d 45, 50 n.7 (1st Cir. 2011); see also United States v. Bustos-Useche, 273 F.3d 622, 627 (5th Cir. 2001) ("exact timing of a flag nation's permission is not a condition to consent under subsection (c)(1)(C)."); United States v. Greer, 285 F.3d 158, 175-76 (2d Cir. 2002) (holding that "consent under the MDLEA can relate back to activity that occurred before consent").  Accordingly, the Dominican Republic's amended response relates back to the date of interdiction.

certification] is a question of international law that can be raised only by the foreign nation." <u>United States v. Cardales-Luna</u>, 632 F.3d 731, 737 (1st Cir. 2011) (citation and internal quotation omitted).  The Dominican Republic amended its response, negating the defendants' claim of registration before the commencement of trial.  The Court need not entertain the defendants' questions regarding the logistics of obtaining a response from the purported flag state.

The post-indictment Department of State certification constitutes incontrovertible proof that the defendants' vessel is stateless.  The defendants contend, however, that the MDLEA "[violates] the constitutional separation of powers" by permitting the executive branch to "manufacture federal jurisdiction over vessels in international waters." (Docket No. 89 at p. 10.)  Proof of jurisdiction is, however, a function of the executive branch. Congress granted the Secretary of State the authority to generate certifications of nationality.  46 U.S.C. § 70502(d)(2).  The defendants disregard this explicit delegation of authority, requesting that the Court undermine the Department of State.  This Court need only determine whether "the statutory requirements for MDLEA prosecution in U.S. courts have been met," recognizing that "any further jurisdictional complaint over that U.S. prosecution is to be handled [by] the executive branch, nation-to-nation, in

the international arena." United States v. López-Hernández, 864
F.3d 1292, 1304 (11th Cir. 2017); see United States v. Ceballo,
Case No. 21-152, 2022 U.S. Dist. LEXIS 198342, at *8 (D.P.R.
Oct. 31, 2022) (Carreño-Coll, J.) (noting that the MDLEA sets forth
a "loud and clear instruction not to look behind these
certifications, which are the product of the Executive Branch's
communications with foreign nations.") (citation omitted).
Because the post-indictment Department of State certification is
conclusive proof of statelessness, the defendants' protestations
regarding this document ring hollow.

### C. **United States v. Dávila-Reyes is Inapplicable**

        The defendants seek refuge in inapplicable precedent.
They contend that Dávila-Reyes "directly controls the outcome of
this case." (Docket No. 61 at p. 2.) The Court disagrees with
this proposition.

        In Dávila-Reyes, the First Circuit Court of Appeals held
that the phrase "vessels without nationality" is coextensive with
the "international law definition of statelessness." 23 F.4th
at 172. A defendant "claimed Costa Rican nationality for [his]
vessel but did not provide any documentation to support that
claim." Id. at 158. Costa Rica officials could neither confirm
nor deny the vessel's registry. Id. at 159. Consequently, law
enforcement officers determined that the vessel was "without

nationality and subject to U.S. jurisdiction" pursuant to subsection (C). Id.

On appeal, the defendants argued that "their vessel was not properly deemed stateless." Id. at 170. The Dávila-Reyes court agreed, holding that subsection (C) is inconsistent with international law. Id. at 188. Pursuant to the latter, a master's verbal declaration of registry establishes a presumption of nationality. Id. at 188-89. ("Rejecting a verbal claim of nationality based on the lack of substantiating evidence [*i.e.* confirmation of registry from Costa Rica] negates that distinct method for claiming nationality recognized both by the MDLEA and by international law.").

The First Circuit Court of Appeals withdrew the Dávila-Reyes decision on July 5, 2022, however, to conduct an *en banc* review of subsection (C). United States v. Reyes-Valdivia, 38 F.4th 288 (1st Cir. 2022). Accordingly, Dávila-Reyes is no longer binding on this Court. See Escalona-Reid, 2022 U.S. Dist. LEXIS 222556, at *3 ("So although we write in the shadow of Dávila-Reyes, it has no weight here.").

Oral argument occurred ten months ago, on October 18, 2022. Reyes-Valdivia, 38 F.4th 288. A disposition has yet to issue, placing subsection (C) and defendants facing prosecution pursuant to this provision in purgatory. In any event, the

impending *en banc* decision cannot shield Sánchez and Guevara from prosecution because the drug-trafficking allegations in this case are based on subsection A.

### D.   The Defendants' Constitutional Challenge

Sánchez and Guevara raise two interrelated constitutional arguments. (Docket No. 89 at p. 13.) First, they assert that the verification procedure set forth in 46 U.S.C. § 70502 ("section 70502") is impermissibly vague. Id. Second, the defendants purport that section 70502 emboldens "arbitrary enforcement by the USCG and others tasked with enforcing the law." Id. Both arguments are meritless.

A statute is void for vagueness in two circumstances. First, an excessively vague statute "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." Hill v. Colorado, 530 U.S. 703, 732 (2000). Second, a statute is unconstitutional if "it authorizes or even encourages arbitrary and discriminatory enforcement." Id. Due process does not demand, however, that Congress account for every conceivable application of a law. Any statute is "susceptible to clever hypotheticals testing its reach." Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct., 894 F.3d 235, 251 (6th Cir. 2018); IMS Health Inc. v Ayotte, 550 F.3d 42, 61 (1st Cir. 2008) ("[S]tatutes do not need to be precise to the point of

pedantry, and the fact that a statute requires some interpretation does not perforce render it unconstitutionally vague.").

    The defendants attempt to sow confusion, presenting a litany of irrelevant questions.  For instance, Sánchez and Guevara ask:

> Whom must the USCG contact in the defendant's claimed nation of registry?  What is required to demonstrate the nation's denial or lack of affirmative and unequivocal corroboration?  What information must the USCG provide? The name of the vessel?  The vessel master's name?  Must the USCG consult the foreign nation's registration process?

These questions are mere musings by the defendants to complicate a pellucid statute.  The defendants cite no authority for the proposition that this level of abstraction is necessary to pass constitutional muster.

    The verification procedure is unambiguous:  The master of the vessel makes a claim of registry, the USCG requests that officials from the purported flag state confirm or deny registration, these officials tender a response, the Secretary of State or his or her designee then memorializes this response in a certification.  46 U.S.C. § 70502(d); cf United States v. Gruezo, 66 F.4th 1284, 1292 (11th Cir. 2023) (holding that the "text of § 70502(d)(1)(B) is sufficiently clear to give ordinary people notice that, without a claim of nationality or registry for the vessel upon request, the vessel will be considered stateless for

purposes of jurisdiction under the MDLEA."). A person of ordinary intelligence is fully capable of understanding this procedure.

The defendants cite Kolender v. Lawson, 461 U.S. 352 (1983), contending that "people navigating the high seas do not have notice whether their ships can be interdicted." (Docket No. 89 at p. 13.) In Kolender, the Supreme Court determined whether a California law transgressed the Due Process Clause. The relevant statute required "that an individual provide 'credible and reliable' identification when requested by a police officer who has reasonable suspicion of criminal activity sufficient to justify a Terry detention." 461 U.S. at 355-56. The Kolender court invalidated this statute, holding that it "contain[ed] no standard for determining what a suspect has to do in order to satisfy the requirement to provide a 'credible and reliable' identification." Id. at 358. Police officers possessed "complete discretion . . . to determine whether the suspect" complied with the statute. Id.

Unlike the police officers in Kolender, Coast Guardsmen lack unbridled discretion to determine which vessels are subject to prosecution in the United States. In this case, the Dominican Republic denied the defendant's claim of registry. (Docket No. 113, Ex. 2.) This response is final and dispositive, not subject to arbitrary interpretation by the Secretary of State. In

contrast to the "credible and reliable" identification requirement
in Kolender, the Dominican Republic's denial of registration is
not open to interpretation.  Indeed, a district court in this
jurisdiction recently denied an identical motion to dismiss an
MDLEA case.  See Ceballo, 2022 U.S. Dist. LEXIS 198342, at *15
(denying the defendant's motion to dismiss, holding that Kolender
is inapplicable because "[there] is no wiggle room about what
response the government needs from the claimed flag state to
exercise jurisdiction").  Consequently, the defendants'
constitutional challenge is unconvincing.

       **E.    The Purported "Nexus" Requirement**

       Sánchez and Guevara move to dismiss the indictment "in
light of the government's inability to establish a nexus linking
the defendants' alleged actions and the United States."  (Docket
No. 89 at p. 17.)  They also maintain that the MDLEA is "an invalid
exercise of Congress' Article I powers, . . . [expanding United
States] jurisdiction well beyond U.S. borders to include people
and acts that have no connection to the United States."  Id. at
pp. 21-22.

       The defendants' nexus argument contravenes well-settled
precedent.  According to the First Circuit Court of Appeals, the
United States need not establish a jurisdictional nexus.  See
United States v. Rodríguez, 507 F.3d 749, 761-62 (1st Cir. 2007)

("We have previously held that the MDLEA does not contain such a nexus requirement; the flag nation's consent to jurisdiction is sufficient") (citing United States v. Bravo, 489 F.3d 1, 7 (1st Cir. 2007) ("We do not read the MDLEA to require a jurisdictional nexus.")); United States v. Nueci-Peña, 711 F.3d 191, 197 (1st Cir. 2013) (holding that the "MDLEA does not require a nexus between a defendant's conduct and the United States").

This Court has held, consistent with the weight of authority, that the MDLEA is a constitutional exercise of congressional authority pursuant to the Pirates and Felonies Clause. See United States v. Díaz-Docel, 990 F. Supp. 2d 163, 164 (D.P.R. 2014) (Besosa, J.) (citing Nueci-Peña, 711 F.3d at 198)). Indeed, district courts within this jurisdiction routinely deny motions to dismiss MDLEA actions on this basis.[5]  Moreover, the

---

[5] See also United States v. Salazar-Realpe, Case No. 15-087, 2015 U.S. Dist. LEXIS 80016 *7 (D.P.R. June 18, 2015) (holding that the "MDLEA is constitutionally valid under the Define and Punish Clause") (Delgado-Hernández, J.); United States v. Ramírez, Case No. 19-117, 2019 U.S. Dist. LEXIS 189135 *4-5 (D.P.R. Oct. 28, 2019) (holding that the "MDLEA does not exceed Congress' power under the Define and Punish Clause") (Cerezo, J.); United States v. Trapp, Case No. 16-159, 2017 U.S. Dist. LEXIS 101569 *17 (D.P.R. May 11, 2017) (holding that the "Felonies Clause provided sufficient congressional authority to enact the MDLEA") (McGiverin, Mag. J.); Singleton v. United States, 789 F. Supp. 492 (D.P.R. 1991) ("[T]here is nothing offensive to the Constitution nor inconsistent with international law for the United States to assert jurisdiction over its own vessel in international waters to prohibit the activity prescribed by this statute, not for the United States to do the same over a vessel the flag country of which has ceded jurisdiction to the United States.") (Fusté, J.).

majority of federal appellate courts are in agreement that Congress

acted within the parameters of Article I in enacting the MDLEA.[6]

### F.   The Defendants' Exclusive Economic Zone Argument

Sánchez and Guevara contend that this Court lacks

jurisdiction because law enforcement agents apprehended them

within Venezuela's exclusive economic zone ("EEZ").    (Docket

No. 89 at p. 21.)   Pursuant to Article 55 of the United Nations

Convention on the Law of the Sea ("UNCLOS"), the "exclusive

economic zone is an area beyond and adjacent to the territorial

sea."[7]   This zone extends 200 nautical miles from land.   Id.   The

defendants maintain that Venezuela's EEZ "does not correspond to

the 'high seas.'"   (Docket No. 89 at pp. 21-22.)   Because Article I

cannot substantiate a criminal prosecution for acts committed

---

[6] See United States v. Pérez-Oviedo, 281 F.3d 400, 403 (3rd Cir. 2002) (holding
that MDLEA "expresses the necessary congressional intent to override
international law to the extent that international law might require a nexus to
the United States for the prosecution of the offenses defined in the [statute]")
(quotation omitted); Suerte, 291 F.3d at 375 (holding that "international law
does not require a nexus" when the flag state consents to the application of
United States law); United States v. Rendón, 354 F.3d 1320, 1325 (11th Cir.
2003) (holding that "this circuit . . . has not embellished the MDLEA with a
nexus requirement)" (citation omitted).   The Ninth Circuit Court of Appeals
adopts a minority view, however, "requir[ing] a nexus between the prohibited
activity and the United States" pursuant to the Due Process Clause.   United
States v. Perlaza, 439 F.3d 1149, 1168-69 (9th Cir. 2006) ("The fact that the
Government received Colombia's consent to seize the members of the Gran Tauro,
remove them to the United States, and prosecute them under United States law in
federal court does not eliminate the nexus requirement.").

[7] Available at https://www.un.org/Depts/los/convention_agreements/convention
_overview_convention.htm (last visited June 21, 2023).   The Court notes that
the "United States has signed but not ratified the UNCLOS."   United States v.
Aybar-Ulloa, 987 F.3d 1, 5 n.2 (1st Cir. 2021).

within a foreign state's EEZ, Sánchez and Guevara argue, the MDLEA is unconstitutional as applied to them.  Id.  This argument is unavailing.

The term "high seas" includes Venezuela's EEZ.  See United States v. Matos-Luchi, 627 F.3d 1, 2 n.1 (1st Cir. 2010) (holding that the Dominican Republic's EEZ is "considered the 'high seas' for purposes of the Coast Guard's enforcement jurisdiction," affirming the defendant's MDLEA conviction); United States v. Beyle, 782 F.3d 159, 167 (4th Cir. 2015) (holding that a nation's EEZ is "merely part of the high seas"); United States v. Iona De Jesús, Case No. 22-20473, 2023 U.S. Dist. LEXIS 103411, at *7-8 (S.D. Fla. May 4, 2023) ("A vessel outside the recognized 12-mile limit of a nation's territorial seas is a 'vessel located within international waters' subject to the United States' jurisdiction under the MDLEA."); United States v. Berroa, Case No. 21-20359, 2022 U.S. Dist. LEXIS 72670, at *9 (S.D. Fla. Apr. 20, 2022) ("[A] nation's exclusive economic zone does not constitute territorial waters but rather remains part of the high seas.  Therefore, the Court finds the MDLEA constitutional as-applied in this case."). The defendant's EEZ argument has no merit.

## IV.  Conclusion

For the reasons set forth above, the defendants' motion to dismiss the indictment is **DENIED**.  (Docket Nos. 61 and 89.)

Criminal No. 20-316 (FAB)                                    21

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 9, 2023.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              SENIOR UNITED STATES DISTRICT JUDGE